In the Matter of BIRCO MINING
COMPANY, INC., Debtor.

UNITED STATES of America, Newton
Manufacturing and Commercial Testing
& Engineering Company, Plaintiffs,

v.

BIRCO MINING COMPANY, INC., a
Corporation, and M. Charles Sterne,
Trustee, Defendants.

Bankruptcy No. 79–04205.
Adv. No. 80–1016.

United States Bankruptcy Court,
N. D. Alabama,
Southern Division.

March 19, 1981.

George C. Batcheler, Asst. U. S. Atty.,
Birmingham, Ala., Karl Kellar, Trial Atty.,
Dept. of Justice, Tax Div., Washington, D.
C., for the U. S.

Jesse W. Shotts, James S. Witcher, Jr.,
Birmingham, Ala., for Birco Mining Co. and
M. Charles Sterne, Trustee.

A. Jerry Beck, Birmingham, Ala., for
Newton Mfg. and Commercial Testing and
Engineering.

OPINION

STEPHEN B. COLEMAN, Bankruptcy
Judge.

The Government in this case in effect
contends that after a levy under Sections
6321 and 6322, International Revenue Code
of 1954, is made upon a taxpayer title to the
property passes to the United States and
such levy is an absolute appropriation in
law, citing *United States v. Pittman*, 449
F.2d 623, 626 (7th Cir. 1971), and is "tanta-
mount to a transferral of ownership" *Sulli-
van v. United States*, 333 F.2d 100, 116 (3rd
Cir. 1964).

Referring further to the Government's
brief, the contention is made mere service
of the notice of levy constitutes a seizure of
the property of the taxpayer, at least in the
case of intangibles. *Phelps v. United
States*, 421 U.S. 330, 95 S.Ct. 1728, 44
L.Ed.2d 201 (1975); *Sims v. United States*,
359 U.S. 108, 79 S.Ct. 641, 3 L.Ed.2d 667
(1959); *Rosenblum v. United States*, 300
F.2d 843 (5th Cir. 1962); *United States v.
Eiland*, 223 F.2d 118 (4th Cir. 1955), at 121;
*Pittman, supra* at 627. Therefore, the mo-

ment the notice of levy was served on Birco's attorney, Birco's cause of action, and any money subsequently received as a result of that cause of action, came within the constructive possession of the United States. Thus the $7,500 judgment effectively became property of the United States as early as July 28, 1978. All rights in and to the cause of action which Birco had previously held were transferred by operation of law to the United States except to the extent of certain enumerated residual rights which were granted to the Debtor pursuant to various provisions of the Internal Revenue Code of 1954. See *In Re: Avery Health Center, Inc., Debtor*, 8 B.R. 1016 (Bkrtcy.W.D.N.Y.1980). Accordingly, only those residual rights were included in the estate when Birco filed its petition more than a year later. Since the chose was in the constructive possession of the Government, the resulting reduction to judgment in the amount of $7,500 also belongs to the Government and in no way can be considered as part of the estate.

The Trial Attorney for the Tax Division, Department of Justice, made the further contention that this Court has no right to consider other claims to the funds in the hands of the Trustee and is without jurisdiction to entertain claims thereto, relying heavily on the case of *Avery Health Center, Inc., supra.*

The facts in this case do not appear to be in dispute. On July 28, 1977, *Birco Mining Company, Inc.* (hereinafter "Birco"), the debtor-taxpayer in this case, filed suit in state court alleging that Alabama Coal Resources, Ltd., had breached a contract with Birco.

On December 19, 1977, an agent of the Internal Revenue Service filed a Notice of Federal Tax Lien for taxes which were due for the second quarter of 1977. On January 3, 1978, a Notice of Federal Tax Lien was filed for taxes which had been due for the first quarter of 1977. On May 12, 1978, a Notice of Federal Tax Lien was filed for the fourth period of 1977. On July 29, 1978, a Notice of Federal Tax Lien was filed for the third quarter of 1977, and on July 10, 1978, a Notice of Federal Tax Lien was filed for the first quarter of 1978.

On July 28, 1978, and August 1, 1978, Notice of Levy were served on attorneys for both parties to attach any proceeds which might result from the suit in state court.

Over a year later, in October of 1979, the state court awarded the debtor a judgment in the amount of $7,500. On November 16, 1979, this Court ordered the Clerk of the state court to turn over the $7,500 it held as a result of the judgment. This money has been paid into this Court. The United States is now seeking to have this money paid to it in partial satisfaction of Birco's tax liabilities, for which it has filed a proof of claim.

The Government's complaint alleges that: "VIII. That claim arose and judgment was awarded before filing the petition in Bankruptcy. In October 1979, prior to the November 16, 1979 filing of a petition in Bankruptcy by Birco Mining Company, Inc., debtor, the state court awarded the debtor a judgment in the amount of $7,500.00 against Alabama Coal Resources, Ltd. and this sum was paid into the state court.

"IX. That judgment in the amount of $7,500.00 and its payment were erroneously transferred by the Clerk of the court by court order to the trustee in bankruptcy for Birco Mining Company, Inc.

"X. That by virtue of the serving of the Notice of Levy on the attorneys for Birco Mining Company, Inc. and Alabama Coal Resources, Ltd. before filing the petition for Bankruptcy by Birco Mining Company, Inc., the monies resulting from the state court proceeding brought by Birco Mining Company, Inc., were attached and transferred to the possession of the United States and are now, not properly in the possession of the Bankruptcy Court. "WHEREFORE, the Plaintiff, United States of America, prays that this Court order, adjudge, and decree that the judgment in the amount of $7,500.00 obtained by Birco Mining Company, Inc., and the

payment of said judgment, which were erroneously transferred to the Trustee in Bankruptcy be turned over to the Internal Revenue Service in partial satisfaction for employment tax liabilities."

Debtor filed its voluntary petition under Chapter 7 on November 16, 1979. On that day Debtor filed an Adversary Proceeding alleging:

"That Birco Mining Company, Inc. received a judgment on October 26, 1979, in the amount of Seven Thousand, Five Hundred ($7,500.00) Dollars. That Paul F. Schlicher filed a garnishment against Birco Mining Co., Inc.'s portion of these monies on the 30th day of October, 1979. That these funds represent all of the assets that the petitioner currently has and that these funds should be paid proportionately to the debtor's creditors rather than solely to one creditor.

"WHEREFORE, PREMISES CONSIDERED, petitioner respectfully asks this Court to notify Paul F. Schlicher by and through his attorney of record, Richard F. Carmody, and order garnishment released so that the funds can be paid to the creditors in a proportionate amount. Petitioner offers to do equity."

On November 20, 1980, after peremptory hearing on notice, the garnishment proceeding instituted by Paul F. Schlicher was ordered released and dismissed and the funds ordered paid to the Trustee.

The Government by Internal Revenue Service never appeared in the pending State Court proceeding nor attempted to have that Court enforce or declare its lien, and relied entirely on the levy or notice to the attorney of record for the Plaintiff, *Birco Mining Company, Inc.*, served during the pendency and actual trial of the case. After litigation in which various claimants and parties participated and a vigorous defense, the Court rendered judgment for Plaintiff, *Birco Mining Company, Inc.*

Internal Revenue Service filed claim in bankruptcy for taxes due and assessed for 1977, as set out above, for $47,313.08 on January 17, 1980. It gave no other notice of its claims until it filed the Adversary Proceeding referred to above on December 17, 1980, wherein it alleges that the:

"... monies resulting from the state court proceeding brought by Birco Mining Company, Inc., were attached and transferred to the possession of the United States and are now, not properly in the possession of the Bankruptcy Court."

"... $7,500.00 obtained by Birco Mining Company, Inc. and the payment of said judgment which were erroneously transferred to the Trustee in Bankruptcy be turned over to the Internal Revenue Service in partial satisfaction for employment tax liabilities."

## THE ISSUES

No order has been made in this case except to recognize the attorney's lien and provide for its payment. The issue is between the United States and the attorney who filed the suit for the Debtor before tax liens were filed by the United States. Alabama has by statute of long standing, Title 34, Code of Alabama, Section 3–61 created liens in favor of attorneys. Section 6323, Title 26 U.S.C., in sub-section (b)(8) specifically protects attorney's lien and subordinates to them. In fact the language of Section 6323, Title 26 U.S.C., is to render invalid tax liens not perfected as to protected classes, including sub-section (b)(8), specifically applying to attorney's liens.

Did the levy on the attorney usurp his lien and supersede his rights and effectually dispossess the attorney and put possession of the res in litigation in the Internal Revenue Service?

Did the levy dispossess the State Court of the case and rob it of jurisdiction?

Was the judgment in the State Court void?

Was Internal Revenue Service under some duty to prosecute its claim and appear in the State Court if it wished to protect its rights?

Conceding that it had a superior lien good against the taxpayer and taxpayer's attorney, could it remain silent and reap the rewards of the judgment against parties who had no knowledge of its claim or levy?

Was the Bankruptcy Court without jurisdiction to order release of garnishment and order money in judgment paid to the Trustee where no appearance was made or notice given by the Internal Revenue Service to either Court?

This case points up the need for the *Bankruptcy Tax Act of 1980* which does not apply to this case. Perhaps these questions may not recur in the future but they need to be answered because they are asserted by representatives of the General Counsel's Office of Internal Revenue Service and are suggested by misinterpretation of cases cited in their brief.

■ True it is, that we have a sovereign Government, but fortunately, a benign sovereign. The power to tax is undoubtedly the power to destroy. The Government could take all, subject to due process of law and right of representation. The Constitutional right to due process is implied and overriding. *Kuehner v. Irving Trust Co.*, 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340; *Billings v. U. S.*, N.Y. 1914, 34 S.Ct. 421, 232 U.S. 261, 58 L.Ed. 596. See also, *U. S. v. Bennett*, 1914, 34 S.Ct. 433, 232 U.S. 299, 58 L.Ed. 612; *John A. Gebelein, Inc. v. Milbourne*, D.C.Md. 1935, 12 F.Supp. 105; *McCray v. U. S.*, Ohio 1904, 24 S.Ct. 769, 195 U.S. 27, 49 L.Ed. 78, 1 Ann.Cas. 561.

The Government retained only a lien for its taxes, Section 6321, I.R.C., and limited it, because history proved to do otherwise would work unconscionable injury to innocent third parties. The development and history of the 16th Amendment and the income tax and its development after the decision in *Pollock v. Farmers' Loan & Trust Co.*, 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759 (1895), is a saga of Constitutional democracy. See such cases as are cited in 47 C.J.S. § 764, and House Report No. 1337, Senate Report No. 1622, and Conference Report No. 2543, which accompanied the Internal Revenue Code of 1954, see pp. 4025, 4554, 5224, and 5340, respectively, of the 1954 U.S.Code Cong. and Adm. News, and the present statutes and regulations have been adopted empirically thru a successive number of cases dealing with citizen and taxpayers' rights and remedies. *U. S. v. Ala.*, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327.

■ A lien can ripen into title and sometimes possession accomplishes this fruition, but only after compliance with regulations and processes of the Internal Revenue Code necessary to due process of law. The law decries a "secret lien," *Corn Exchange Bank v. Klauder*, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884, and notice filing is now an accepted part of commercial law. Sections 9–301–18, Uniform Commercial Code, Part 3 of Title 9.

Do the cases cited by the Government really hold that merely filing a notice of tax lien under 26 U.S.C. 6321 or giving notice of levy under 26 U.S.C. 6331 effect a transfer of title or possession in all cases without seizure or actual change of possession?

A review of the authorities will reveal they do not go that far.

In the Supreme Court case of *Phelps v. U. S.*, supra, the assignee came into actual possession of the funds and the levy was completed before the Bankruptcy Court tried to assume jurisdiction. The old problem of Plenary and summary jurisdiction is now passé and rendered nugatory by the Bankruptcy Code of 1978, and that case has no application to the facts in this case.

The Government chose to risk its levy on the funds to come into the attorney's hands, which never happened in this case and the levy amounted to nothing because he did not get the funds. Garnishment in the State Court and bankruptcy intervened.

The gist of the *Phelps Case* is the statement "The levy, therefore, gave the United States *full legal right* to the $38,000 levied upon as against the claim of the petitioner-receiver."

■ Here the contest is between the attorney and the United States and the attorney's lien accrued first and is prior and superior to the tax lien.

This Court has long recognized the right of the Tax Authorities when seizure is actual and possession is accomplished. Such

possession can be constructive where control is taken and exercised. The Government was compelled to pursue its rights in the State Court as any other litigant and is bound by the judgment of that Court where it has knowledge of its pendency and the duty to protect its lien, or to assert possession or lack of jurisdiction. It ignored the State Court at its peril.

In the *Avery Case*, the Internal Revenue Service levied upon and physically seized the inventory of a drug store two days before the debtor filed under Chapter 11 of the new Bankruptcy Code. The *Avery Case* doesn't apply to any constructive seizure or notice requirements that are the main issues in the case at bar. It deals with rights and interests in property that has been levied upon and *seized as well.* None of the Government's three cited cases deal specifically with facts that are similar to the case at bar. The *Phelps* and *Avery Cases* deal more with jurisdiction than with notice and levy. None address the priority of liens between Government and the Attorney or the notice that is required to be given to the taxpayer under Section 6303 I.R.C.

Taken together these two provisions would make the Government's lien junior to the attorney's lien provided under Section 34–3–61 of the 1975 Alabama Code. In addition, the cases are uniform in holding that while the Internal Revenue Code creates a lien, it does not confer priority on the lien and that the priority is determined by the principle that the first in time is the first in right. See *U. S. v. Bess*, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135; *U. S. v. Williams*, 234 F.Supp. 117 (D.C.Conn.1964); *U. S. v. Bates*, 158 F.Supp. 32 (D.C.Ky. 1957); *Fleming v. Brownfield*, 290 P.2d 993 (1955).

The attorney's lien attaches when service is first had upon the defendant or respondent of summons, writ, or other process at the first of the case. Section 34–3–61(d) 1975 Alabama Code. Birco Mining Company, Inc. filed suit in the State Court on July 28, 1977, with service and answer of defendant coming shortly thereafter. It was not until December 19, 1977, that an agent of the Internal Revenue Service filed a Notice of Federal Tax Lien.

The Debtor brought suit to collect the disputed account *before* Notice of Lien was filed and that suit was still pending at the time Notice of Levy was served on the Debtor's attorney.

Would it be right or equitable to deny the Debtor's attorney compensation for collecting the disputed sums? This Court feels that it would be harsh and totally inequitable to allow the Internal Revenue Service to confiscate the $7,500 settlement and leave the Debtor's attorney zero for his reward in obtaining the amount. It would be tantamount to having the attorney work for the Internal Revenue Service free of charge for two long years.

Therefore by separate Order the Court has provided for payment of the attorney's lien and will hold further hearings to determine the disposition of the remaining funds.